UNTIED STATE DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
(West Palm Beach Division)

CASE NO.


ANGELA LAMBERT,

     Plaintiff,

vs.


WORLDWIDE MARKETING
TECHNOLOGIES CORPORATION, a
Florida for-profit corporation,
CLAUDINA PENNELL, an individual and
DANIEL PENNELL, an individual,

     Defendants.

_____/

## COMPLAINT

Plaintiff, ANGELA LAMBERT ("Plaintiff"), sues Defendants, WORLDWIDE MARKETING TECHNOLOGIES CORPORATION, a Florida for-profit corporation, CLAUDINA PENNELL, an individual and DANIEL PENNELL, an individual (herein "Defendants"), and states the following:

## Introduction

Plaintiff, a former employee of Defendants, sues Defendants for violation of the Florida "Whistleblower Act", for religious discrimination, age discrimination, retaliatory hostile work environment, for unpaid overtime wage compensation, defamation and unjust enrichment.

1

Plaintiff seeks back pay, compensatory damages, punitive damages, reinstatement or front pay, compensation for fringe benefits, injunctive relief, damages for emotional distress, humiliation, emotional pain and suffering, mental anguish, loss of dignity, loss of enjoyment of life, inconvenience and other intangible injuries and non-pecuniary losses, and attorney's fees and costs.

Additionally, Plaintiff seeks a declaration of rights pursuant to Rule 57 of the Federal Rules of Civil Procedure and the Federal Declaratory Judgment Act ("DJA"), 28 U.S.C. § 2201.

### Jurisdiction, Venue And Parties

1.      This is an action arising under, *inter alia*, Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq*. ("Title VII"), the Florida Civil Rights Act § 760.01 *et seq*., Fla. Stat. (2011) ("FCRA"), the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq*. as amended, 29 U.S.C. § 626(b) ("ADEA") and the Fair Labor Standards Act of 1938, 29 U.S.C. § 201, *et seq*. ("FLSA").  This Court has federal-question jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331.  Because the state claims arise out of the same nucleus of operative facts as do the federal claims, this Court has supplemental jurisdiction over the state claims pursuant to 28 U.S.C. § 1367.

2.      Plaintiff, is a 47-year-old female who at all times material was employed by Defendants as a bookkeeper from approximately March 24, 2014 through June 22, 2014.

3.      Venue is proper in the West Palm Beach Division of the United States District Court for the Southern District of Florida because the claims arose in St. Lucie County, Florida.

4.      Defendant, WORLDWIDE MARKETING TECHNOLOGIES CORPORATION ("WMTEC") was Plaintiff's employer.

2

5.      At all times relevant hereto, WMTEC had more than fifteen (15) employees which makes Title VII applicable.

6.      At all times relevant hereto, WMTEC had more than fifteen (15) employees which makes the FCRA applicable.

7.      At all times relevant hereto, WMTEC had more than twenty (20) employees which makes the ADEA applicable.

8.      Defendant, CLAUDINA PENNELL was at all times relevant an officer of WMTEC; was one of Plaintiff's direct supervisors and had the authority to direct Plaintiff's actions and working conditions.  Defendant, CLAUDINA PENNELL was an agent of WMTEC.

9.      Defendant, DANIEL PENNELL was at all times relevant the CEO of WMTEC; was one of Plaintiff's direct supervisors and had the authority to direct Plaintiff's actions and working conditions.  Defendant, DANIEL PENNELL was an agent of WMTEC.

<u>Satisfaction Of Conditions Precedent</u>

10.      In September 2014, Plaintiff timely filed a Charge for Discrimination with the Equal Employment Opportunity Commission ("EEOC") in which she alleged age and religious discrimination and retaliation against WMTEC.

11.      On or about October 20, 2014, Plaintiff filed an amended Charge of Discrimination with the EEOC.

12.      On or about April 23, 2015, the EEOC issued a Dismissal and Notice of Rights letter to Plaintiff entitling her to file a civil action on her age, religion and retaliation claims within 90 days of its receipt.

LAW OFFICE OF LOWELL J. KUVIN
17 EAST FLAGLER STREET · SUITE 223 · MIAMI, FLORIDA 33131 · TEL.: 305.358.6800 · FAX: 305.358.6808

13.     The EEOC's April 23, 2015 Dismissal and Notice of Rights letter was received by Plaintiff on April 29, 2015.  (A copy of the EEOC's April 23, 2015 Dismissal and Notice of Rights letter is attached hereto as **Exhibit "1."**)

14.     All conditions precedent to the bringing of this action have been satisfied or waived.

## The Applicable Statutes

15.     Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, provides in pertinent part at 42 U.S.C. § 2000e-2(a) as follows:

> It shall be an unlawful employment practice for an employer—
>
> **(1)** to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's … religion…; or
>
> **(2)** to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's … religion…

16.     The FCRA provides at § 760.10(1), as follows:

> It is an unlawful employment practice for an employer:
>
> (a) To discharge or to fail or refuse to hire any individual, or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's … religion, … age…
>
> (b) To limit, segregate, or classify employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities, or adversely affect any individual's status as an employee, because of such individual's … religion,… age…

4

17.     The ADEA provides at 29 U.S.C. § 623(a), in pertinent part:

It shall be unlawful for an employer —

(1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age; [or]

(2) to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age...

18.     Florida Statutes, § 448.102 provides:

An employer may not take any retaliatory personnel action against an employee because the employee has:

…

(3) Objected to, or refused to participate in, any activity, policy, or practice of the employer which is in violation of a law, rule, or regulation.

## COVERAGE UNDER FLSA

19.     During all material times, WMTEC was an enterprise covered by the FLSA and as defined by 29 U.S.C. § 203(r) and 203(s), in that it was engaged in interstate commerce or in the production of goods for interstate commerce within the meaning of § 29 U.S.C. 203(s)(1) in that said enterprise had employees engaged in interstate commerce or in the production of goods for interstate commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for interstate commerce by any person.

20.     During all material times, Defendants were employers as defined by 29 U.S.C. § 203(d).

21.     During all material times, WMTEC had two or more employees who moved goods in interstate commerce.

22.     During all material times, WMTEC had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level which are separately stated).

23.     Defendant, CLAUDINA PENNELL ("Mrs. Pennell") acted directly and indirectly in the interest of WMTEC.  Mrs. Pennell was an officer of WMTEC, supervised Plaintiff and had the power to direct employees' actions.  Mrs. Pennell had management responsibilities, degree of control over the corporation's financial affairs and compensation practices, and was in a position to exert substantial authority over policy relating to employee wages and whether to compensate (or not to compensate) employees at WMTEC in accordance with the FLSA, making Mrs. Pennell an employer pursuant to 29 U.S.C. § 203(d).

24.     Defendant, DANIEL PENNELL ("Mr. Pennell") acted directly and indirectly in the interest of WMTEC.  Mr. Pennell was the CEO of WMTEC, supervised Plaintiff and had the power to direct employees' actions.  Mr. Pennell had management responsibilities, degree of control over the corporation's financial affairs and compensation practices, and was in a position to exert substantial authority over policy relating to employee wages and whether to compensate (or not to compensate) employees at WMTEC in accordance with the FLSA, making Mr. Pennell an employer pursuant to 29 U.S.C. § 203(d).

## GENERAL ALLEGATIONS

25.     Prior to her employment at WMTEC, Plaintiff had been a bookkeeper for over 16 years.

26.     Plaintiff was selected by Mr. Pennell, the CEO of WMTEC, after he had interviewed several other candidates.

27.     Plaintiff began working for Defendants on March 24, 2014, as a bookkeeper.

28.     Soon after, she received praise for her work from Mr. Pennell including that she was a "Rock Star", that he was glad that he had hired her and that WMTEC was lucky to have her as an employee.

29.     At the inception of Plaintiff's employment, she was to be paid the agreed upon wage of $15.00 per hour.

30.     Soon after, Plaintiff was given a raise and the agreed upon wage was raised to $17.33 per hour.

## Religious Discrimination

31.     Shortly after her hiring, Plaintiff was subjected to a pattern of persistent religious discrimination by Defendants and their employees.

32.     Mr. Pennell and Mrs. Pennell are Evangelical Protestants and are part of the Christian and Missionary Alliance.  Most of the junior executives and other local employees are members or attendees of a denominationally-affiliated local church founded and governed by Mr. Pennell and his father.

33.     Mr. Pennell is the CEO of WMTEC and also an Evangelical Protestant.

34.     Plaintiff is Pentecostal.[1]

35.     Defendants and their employees do not espouse some of the religious beliefs and doctrines of Plaintiff, and are staunchly opposed to some of Plaintiff's religious beliefs and doctrines such as praying "in tongues."

---

[1] While Plaintiff is Christian, she is a Pentecostal Christian.

7

36.     Defendants held 90-minute weekly prayer meetings/Bible study ("Bible Study") on Wednesday mornings at which all employees of WMTEC that were present in the office complex were expected to attend.

37.     Plaintiff was paid her regular rate of pay for attending the weekly Bible Study.

38.     Indeed, all employees that were present in the office complex on Wednesday mornings were gathered up with an announcement that Bible Study was about to start.

39.     If employees who were present in the office complex on a Wednesday morning did not attend a Bible Study, Defendants and other employees would make comments implying that they should have attended and/or that they had done something wrong.

40.     The weekly Bible Study was led by Mr. Pennell or by his father, an Evangelical Protestant pastor.

41.     When Plaintiff interviewed and accepted the position at WMTEC, she was unaware of the company requirement to attend the weekly Bible Study.

42.     Plaintiff would not have attended the weekly Bible Study if there had not been a requirement to attend.

43.     Plaintiff was pressured to attend the weekly Bible Study, and attended same for fear of losing her employment.  Plaintiff believes that a former fellow employee was terminated for his failure to attend the weekly Bible Study.

44.     But for Plaintiff's fear that she would lose her employment, Plaintiff would not have attended the weekly Bible Study.

45.     Plaintiff was pressured to comport herself to and espouse Evangelical Protestant religious beliefs and doctrines which are contrary to her own.

Law Office of Lowell J. Kuvin
17 East Flagler Street · Suite 223 · Miami, Florida 33131 · Tel.: 305.358.6800 · Fax: 305.358.6808

46.     Plaintiff was also pressured to comport herself to and espouse the same beliefs and opinions about the topics addressed by Defendants at the weekly Bible Study.

47.     Due to the fact that Plaintiff is Pentecostal, and the ownership, most of the junior executives and other local employees of Defendants are Evangelical Protestants, Plaintiff was viewed and treated differently because of her differing beliefs and doctrines.

48.     Plaintiff's father is a Pentecostal pastor, ordained minister and published author.

49.     In or about April 2014, Plaintiff provided a copy of her father's book to Mr. Pennell as a gift.  In that book, Plaintiff's particular religious beliefs and doctrines are discussed. Mr. Pennell was not pleased with the gift apparently because he and the members of his particular religious denomination fervently disagree with, hold strong antipathy towards and are hostile towards Plaintiff's Pentecostal beliefs and doctrines.

50.     The unspoken attitude of Defendants and company employees towards Plaintiff was, "Oh, she's one of those who believe that; we don't believe that around here; she's not really `one of us, she's one of them.'"  As a result, Plaintiff was treated differently and as inferior because her religious views and beliefs were not the same as Defendants and Defendants' employees.  In effect, Plaintiff was shunned by Defendants and Defendants' employees because of her differing religious views and beliefs.

51.     Also subsequent to giving Mr. Pennell a copy of her father's book, Plaintiff was singled out almost every week during the weekly Bible Study and asked to "pray."

52.     Defendants singled out Plaintiff to pray because they wanted to witness Plaintiff pray "in tongues" (which is a widely accepted practice in the Pentecostal Church) so that Defendants could then mock Plaintiff and further discriminate against her.

Law Office of Lowell J. Kuvin
17 East Flagler Street · Suite 223 · Miami, Florida 33131 · Tel.: 305.358.6800 · Fax: 305.358.6808

53.     As such, Plaintiff was not afforded the opportunity to pray the way she normally would, *i.e.*, the Pentecostal way.

54.     Each time that Plaintiff was singled out and asked to pray during the weekly Bible Study, Plaintiff felt that her religion and her religious beliefs were under attack by Defendants and Defendants' employees.

55.     During the weekly Bible Study, Plaintiff was also subjected to negative comments regarding the Pentecostal religion and doctrinal differences between followers of the Pentecostal faith and the Evangelical Protestant faith.

56.     During Plaintiff's employment at WMTEC, Defendants did not treat any of the other employees in the same or similar manner.

57.     These actions constituted significant, material and continued religious discrimination by Defendants and Defendants' employees against Plaintiff.

### Age Discrimination

58.     Plaintiff was 45 years old when she began her employment with WMTEC.

59.     Plaintiff was subjected to persistent age discrimination by Defendants in the form of hostile verbal attacks by Mrs. Pennell in which Plaintiff was ridiculed, mocked, harassed and derided for her age – many times in the presence of other employees of WMTEC.

60.     At all relevant times, Plaintiff was the oldest employee at WMTEC.

61.     With the exception of Mr. Pennell, Mrs. Pennell and one senior vice president, all of WMTEC's employees were in their twenties and thirties.

62.     Mrs. Pennell routinely and repeatedly told and mocked Plaintiff: that she was an "old gal"; to come on and pick up the pace "old gal"; "Come on old gal, you can do it"; to keep

10

up with the pace of the younger employees; to "think fast"; that Plaintiff was "too old to cut the mustard"; that Plaintiff did not have a high enough energy level; that Plaintiff was not technologically advanced enough to keep up with the rest of the employees, and therefore not as "smart" as the rest of the employees; and generally commented and insinuated that Plaintiff was too old to perform her duties and responsibilities at WMTEC.

63.     Mrs. Pennell's age discriminatory treatment caused Plaintiff to suffer emotional distress, humiliation, emotional pain and suffering, mental anguish, loss of dignity, loss of enjoyment of life, inconvenience and other intangible injuries and non-pecuniary losses.

64.     During Plaintiff's employment at WMTEC, Mrs. Pennell did not treat any of the other employees in the same or similar manner.

### Whistleblower and Retaliation

65.     At the inception of Plaintiff's employment, Plaintiff discovered several problems, issues, irregularities, discrepancies and improper and illicit practices in WMTEC's existing bookkeeping systems, payroll systems, labor law compliance, employee compensation practices, tax reporting practices and accounting practices.

66.     Specific problems included, but were not limited to, WMTEC's intentional non-compliance with the FLSA with regard to overtime wages to employees of WMTEC; fraudulent misclassification and misreporting of a significant number of foreign employees to avoid tax liabilities, withholding, periodic payment requirements and annual reporting requirements under the Foreign Account Tax Compliance Act, 26 U.S.C.A. § 1471, *et seq*.; failure to make mandatory quarterly estimated tax payments to the United States Internal Revenue Service ("IRS"); failure to provide the IRS with mandatory payroll reports and other required

11

documentation for previous years; intentional and fraudulent misclassification of personal expenditures chargeable to WMTEC's corporate officers as company expenses in order to mitigate or avoid tax liability; failure of WMTEC to procure worker's compensation insurance; and an inequitable and discriminatory employee comp-time policy (collectively the "Illicit Activities").

67.     When she began her employment with Defendants, Plaintiff brought these Illicit Activities to the attention of Mr. Pennell and Mrs. Pennell, and endeavored to rectify the Illicit Activities.

68.     Plaintiff's efforts to rectify most of the Illicit Activities were met with hostility, defiance, emotional outbursts, resistance, reprimand, rebuke and harassment by Mrs. Pennell.

69.     Plaintiff advised Mrs. Pennell that Plaintiff would not participate in any illegal, fraudulent or improper accounting practices or tax-related activities such as the Illicit Activities, and Plaintiff strongly urged Mrs. Pennell to take corrective measures and to seek counsel from WMTEC's certified public accountant ("CPA").

70.     Despite Plaintiff explaining to Mrs. Pennell that the Illicit Activities were or could be illegal, and at a minimum were contrary to generally accepted accounting principles ("GAAP"), this hostile treatment continued by Mrs. Pennell on an almost daily basis resulting in a hostile work environment.

71.     Mrs. Pennell conducted herself in an unprofessional, emotionally charged, hostile and abusive manner towards Plaintiff, often in the presence of other employees, as a direct result of Plaintiff bringing the Illicit Activities to Mrs. Pennell's attention.

12

72.     During Plaintiff's employment with Defendants, Mrs. Pennell did not treat any other employee in the same or similar manner.

73.     Plaintiff made numerous efforts to further discuss the Illicit Activities, the hostile work environment and Mrs. Pennell's behavior with Mrs. Pennell, and specifically asked if Plaintiff and Mrs. Pennell could discuss same with Mr. Pennell.  However, Mrs. Pennell refused same and expressly forbade Plaintiff from discussing the Illicit Activities, the hostile work environment or Mrs. Pennell's behavior with Mr. Pennell or anyone else.

74.     Ultimately, the daily mistreatment, harassment, ongoing hostile work environment, prohibition against conciliation or reporting of existing problems, inability to properly resolve accounting and administrative disputes, and a false allegation of improper and unauthorized use of a company credit card by Plaintiff became unbearable, and Plaintiff requested an emergency meeting with Mr. Pennell on Friday, June 20, 2014.

75.     Plaintiff had requested the emergency meeting with Mr. Pennell in order to advise him of the Illicit Activities, the hostile work environment and Mrs. Pennell's behavior, and began the June 20, 2014 emergency meeting by outlining the aforementioned issues to him. Plaintiff further advised Mr. Pennell that she objected to the Illicit Activities and would not participate in same.   However, Mr. Pennell refused to listen, saying "Discussion ended. Meeting over!"

76.     Within an hour, Mr. Pennell returned to Plaintiff's office, closed the door and began an extremely loud, angry, hostile, dictatorial, intimidating and verbally abusive tirade against Plaintiff for what she had said in the emergency meeting.   This tirade lasted approximately 40 minutes.

13

77.     At that time, Mr. Pennell told Plaintiff that he had appointed Mrs. Pennell as Plaintiff's direct supervisor to oversee every aspect of Plaintiff's work; ordered Plaintiff to do exactly what Mrs. Pennell told her to do; told Plaintiff repeatedly to "shut up"; told Plaintiff that he did not want to ever hear that Plaintiff was arguing with Mrs. Pennell; and ordered Plaintiff to just do whatever Mrs. Pennell told her to do – despite the fact that Plaintiff had advised Mr. Pennell that many of the issues involved the Illicit Activities.

78.     Also at that time, Mr. Pennell specifically told Plaintiff that he did not want to hear about, know about or hear Plaintiff ever talking about the Illicit Activities again; that he did not want Plaintiff to ever give him advice again; that he did not want Plaintiff to speak about her experience, professional expertise or knowledge again with regard to the Illicit Activities; that going forward, he wanted Plaintiff to do exactly what Mrs. Pennell told her to do; that he directed Mrs. Pennell to closely scrutinize all of Plaintiff's work activities, and that Plaintiff should do everything that Mrs. Pennell told Plaintiff to do if Plaintiff wanted to keep her job.

79.     At the end of his tirade, Mr. Pennell asked Plaintiff whether she understood everything, to which she responded affirmatively.

80.     During his approximately 40-minute tirade, Mr. Pennell intimidated, harassed, verbally abused, traumatized and terrorized Plaintiff to such an extent that Plaintiff at one point feared for her safety.

81.     As a result, Plaintiff was extremely upset, shaking and crying for several hours afterwards.

82.     Plaintiff left work at her normal time on that Friday evening, June 20, 2014.

14

83.     That same evening, Defendants began their retaliatory actions and a smear campaign against Plaintiff by filing a fraudulent police report accusing her of theft of a company computer and files; calling an emergency company-wide meeting (with the exception of Plaintiff) on the following morning (Saturday) to advise all employees that there had been an alleged "security breach" by or because of Plaintiff, and ultimately terminating Plaintiff's employment by e-mail on Sunday, July 22, 2014, wherein several pre-textual reasons were given as the reasons for her termination.

## FLSA

84.     At the inception of Plaintiff's employment, she was to be paid the agreed upon wage of $15.00 per hour.

85.     Soon after, Plaintiff was given a raise and the agreed upon wage was raised to $17.33 per hour.

86.     During her employment with Defendants, Plaintiff regularly worked forty (40) hours per seven-day week.

87.     During her employment with Defendants, Plaintiff regularly worked in excess of forty (40) hours per seven-day week.

88.     Plaintiff worked in excess of 54 hours of overtime during her employment with Defendants.

89.     During all times relevant hereto, Defendants and their representatives knew, should have known and/or permitted Plaintiff to work in excess of 40 hours per week.

90.     Defendants were aware Plaintiff was working hours in excess of the agreed upon hours she would be required to work each week, but did not pay her for the extra hours.

15

91.    Plaintiff was entitled to be paid at the overtime rate of one-and-a-half times the regular rate of pay.

92.    Plaintiff is entitled to be paid her overtime wages for every week that she worked for Defendants in excess of 40 hours per week and for which Defendants did not remunerate her.

93.    Defendants knew or showed reckless disregard for whether their conduct was prohibited by statute, and Defendants willfully failed to pay Plaintiff her agreed upon overtime pay in violation of the FLSA.

94.    Because of the nonpayment of wages for hours suffered or permitted by Defendants, Defendants willfully engaged in practices that denied Plaintiff her wages due under the FLSA.

95.    By reason of the intentional, willful and unlawful acts of Defendants, Plaintiff has suffered damages, plus incurring costs and reasonable attorney's fees.

96.    Plaintiff retained the undersigned counsel and agreed to pay a reasonable fee for all services rendered.

**COUNT I**
**RETALIATORY TERMINATION IN**
**<u>VIOLATION OF FLORIDA STATUTES, § 448.101,</u> *et seq*.**

97.    Plaintiff repeats, re-alleges and reincorporates the allegations of paragraphs 1-30, 65-83, 96 as if set forth fully at length, and alleges:

98.    Plaintiff is an employee as defined by § 448.101(2), Fla. Stat., and is further protected under § 448.102 because Plaintiff objected to and refused to participate in Defendants' Illicit Activities which are activities, policies and practices in violation of laws, rules or regulations, as envisioned by § 448.102(3), Florida Statutes.

16

99.     WMTEC at all relevant times was a Florida for-profit corporation and an employer pursuant to § 448.101(3), Fla. Stat.

100.    As set forth above, Defendants willfully and intentionally engaged in the Illicit Activities in violation of applicable laws, rules and regulations.

101.    When interviewing with Mr. Pennell for the bookkeeping position, Plaintiff specifically asked if the books and records of WMTEC were in order.   Plaintiff also advised Mr. Pennell that she would not be party to nor participate in any illicit or improper accounting or business practices if employment was offered and accepted.

102.    Mr. Pennell assured Plaintiff that the WMTEC followed all legal regulations.

103.    Plaintiff brought the Illicit Activities to Mr. Pennell's attention soon after the inception of her employment and asked Mr. Pennell to consult with WMTEC's CPA as to their proper resolution.

104.    Mr. Pennell responded that WMTEC was following the law.

105.    Plaintiff then brought the Illicit Activities to the attention of her supervisor, Mrs. Pennell, on several occasions and asked Mrs. Pennell to consult with WMTEC's CPA as to their proper resolution.  Plaintiff also advised Mrs. Pennell that she would not participate in the Illicit Activities.

106.    Plaintiff's complaints were repeatedly met with hostility, aggression and anger by Mrs. Pennell.

107.    On June 20, 2015, during the emergency meeting with Mr. Pennell, Plaintiff again complained to him about the Illicit Activities, but Mr. Pennell refused to listen, was dismissive and ended the meeting abruptly.

17

108.    Less than an hour later, Mr. Pennell returned and instructed Plaintiff to not give any further advice nor make any further complaints regarding the Illicit Activities, and to do whatever Mrs. Pennell told her to do or her employment would be terminated.

109.    During a telephone conversation that same evening between Plaintiff's father and Mr. Pennell, wherein Plaintiff's father asked Mr. Pennell why he had yelled at, scared and intimidated his daughter, Mr. Pennell stated that he did not think that Plaintiff could continue to work at WMTEC.

110.    When Plaintiff's father advised Mr. Pennell that it would be unwise to terminate Plaintiff's employment, Mr. Pennell stated that it sounded like he was being set up for a lawsuit.

111.    Within hours, Defendants instituted a smear campaign against Plaintiff by filing a false and fraudulent police report and holding an emergency company-wide meeting the following morning, Saturday, June 21, 2014, wherein they falsely and fraudulently advised all of the other company employees present that Plaintiff had been involved in a "security breach"; that the other employees should be wary of their credit reports and personal information because Plaintiff had misappropriated their personal information; that Plaintiff may attempt to harm them through identity theft; and that WMTEC would pay for credit monitoring for all employees in order to prevent same.

112.    Plaintiff's employment was terminated by e-mail on Sunday, July 22, 2014, wherein several pre-textual reasons were given as the reasons for her termination.

113.    The motivating factor for the termination of Plaintiff's employment was Plaintiff's repeated requests that Defendants comply with applicable law, rules, regulations and

LAW OFFICE OF LOWELL J. KUVIN
17 EAST FLAGLER STREET · SUITE 223 · MIAMI, FLORIDA 33131 · TEL.: 305.358.6800 · FAX: 305.358.6808

GAAP, and Plaintiff's objections and refusal to participate in the Illicit Activities.  In other words, Plaintiff would not have been fired but for her "whistleblower" complaints.

114.   Defendants' actions in terminating Plaintiff's employment violated her rights under § 448.102(3), Fla. Stat.

WHEREFORE, Plaintiff demands the entry of judgment in her favor and against WMTEC as follows:

a)   Directing WMTEC to reinstate Plaintiff with full seniority and benefits or provide front pay in lieu of reinstatement, or otherwise make Plaintiff whole;

b)   Awarding Plaintiff back pay, front pay and benefits to which she would have been entitled but for WMTEC's discriminatory acts;

c)   Awarding Plaintiff compensatory and punitive damages;

d)   Awarding Plaintiff damages for emotional distress, humiliation, emotional pain and suffering, mental anguish, loss of dignity, loss of enjoyment of life, inconvenience and other intangible injuries and non-pecuniary losses;

e)   Awarding Plaintiff pre-judgment interest; and

f)   Awarding Plaintiff her costs and reasonable attorney's fees pursuant to § 448.104, Fla. Stat.

## COUNT II
## RELIGIOUS DISCRIMINATION IN VIOLATION OF TITLE VII

115.   Plaintiff repeats, re-alleges and reincorporates the allegations of paragraphs 1-57, 96 as if set forth fully at length, and alleges:

116.   Plaintiff's religious beliefs (Pentecostal) was a but-for cause of WMTEC's discriminatory treatment of Plaintiff.

LAW OFFICE OF LOWELL J. KUVIN
17 EAST FLAGLER STREET · SUITE 223 · MIAMI, FLORIDA 33131 · TEL.: 305.358.6800 · FAX: 305.358.6808

117.   Plaintiff's religion was a substantial, motivating factor in WMTEC's treatment of her.

118.   WMTEC engaged in a pattern and practice of religious discrimination against Plaintiff.

119.   WMTEC's management was not only aware of WMTEC's religious discriminatory treatment of Plaintiff, but management also engaged in religious discriminatory treatment of Plaintiff.

120.   Despite Plaintiff's complaint or attempts to complain of the religious discrimination, WMTEC did not correct their religious discriminatory treatment and the discrimination continued.

121.   WMTEC knew or should have known that it was engaging in a pattern and practice of religious discrimination against Plaintiff.

122.   WMTEC's discriminatory conduct, as more particularly alleged above, violated the statutory rights of Plaintiff against religious discrimination, damaged Plaintiff and is continuing to cause her irreparable harm for which there is no adequate remedy at law.

123.   As a direct, natural and proximate result of religious discrimination by WMTEC, Plaintiff has suffered damages including but not limited to, lost wages and benefits, future pecuniary losses, emotional distress, humiliation, emotional pain and suffering, mental anguish, loss of dignity, loss of enjoyment of life, inconvenience and other intangible injuries and non-pecuniary losses.

124.   The religious discrimination by WMTEC towards Plaintiff was willful and intentional, entitling her to liquidated damages.

20

125.     Plaintiff is entitled to recover reasonable attorney's fees and costs.

WHEREFORE, Plaintiff demands the entry of judgment in her favor and against WMTEC as follows:

a)      Permanently enjoining WMTEC, its officers, agents, servants, employees and all other persons in active concert or participation with it from violating Title VII's prohibition against religious discrimination as to Plaintiff, and directing WMTEC to reinstate Plaintiff with full seniority and benefits or provide front pay in lieu of reinstatement, or otherwise make Plaintiff whole;

b)      Ordering WMTEC to institute and carry out policies, practices, and programs which provide equal employment opportunities for persons of all religious beliefs, and which eradicate the effects of WMTEC's past and present unlawful discrimination practices;

c)      Awarding Plaintiff back pay and benefits to which she would have been entitled but for WMTEC's age discriminatory acts;

d)      Awarding Plaintiff damages for emotional distress, humiliation, emotional pain and suffering, mental anguish, loss of dignity, loss of enjoyment of life, inconvenience and other intangible injuries and non-pecuniary losses;

e)      Awarding Plaintiff liquidated damages;

f)      Awarding Plaintiff prejudgment interest; and

g)      Awarding Plaintiff her costs and reasonable attorney's fees pursuant to 42 U.S.C. § 2000e-5(k).

LAW OFFICE OF LOWELL J. KUVIN
17 EAST FLAGLER STREET · SUITE 223 · MIAMI, FLORIDA 33131 · TEL.: 305.358.6800 · FAX: 305.358.6808

## COUNT III
## RELIGIOUS DISCRIMINATION IN VIOLATION OF FLORIDA CIVIL RIGHTS ACT

126.    Plaintiff repeats, re-alleges and reincorporates the allegations of paragraphs 1-57, 96 as if set forth fully at length, and alleges:

127.    Plaintiff's religious beliefs (Pentecostal) was a but-for cause of Defendants' discriminatory treatment of Plaintiff in violation of the FCRA.

128.    Plaintiff's religion was a substantial, motivating factor in WMTEC's treatment of her.

129.    WMTEC engaged in a pattern and practice of religious discrimination against Plaintiff.

130.    WMTEC's management was not only aware of WMTEC's religious discriminatory treatment of Plaintiff, but management also engaged in religious discriminatory treatment of Plaintiff.

131.    Despite Plaintiff's complaint or attempts to complain of the religious discrimination, WMTEC did not correct its religious discriminatory treatment and the discrimination continued.

132.    WMTEC knew or should have known that it was engaging in a pattern and practice of religious discrimination against Plaintiff.

133.    WMTEC's discriminatory conduct, as more particularly alleged above, violated the statutory rights of Plaintiff against religious discrimination, damaged Plaintiff and is continuing to cause her irreparable harm for which there is no adequate remedy at law.

134.    As a direct, natural and proximate result of the religious discrimination by WMTEC and its agents, Plaintiff has suffered damages, including but not limited to, lost wages,

LAW OFFICE OF LOWELL J. KUVIN
17 EAST FLAGLER STREET · SUITE 223 · MIAMI, FLORIDA 33131 · TEL.: 305.358.6800 · FAX: 305.358.6808

lost benefits, future pecuniary losses, emotional distress, humiliation, emotional pain and suffering, mental anguish, loss of dignity, loss of enjoyment of life, inconvenience and other intangible injuries and non-pecuniary losses.

135.     The religious discrimination by WMTEC towards Plaintiff was willful, wanton and in flagrant disregard of Plaintiff's statutorily protected rights against religious discrimination, so as to justify punitive damages.

136.     WMTEC's treatment of Plaintiff has also caused her irreparable harm through the violation of her Florida statutory rights against religious discrimination, for which there is no adequate remedy at law.

137.     Plaintiff is entitled, pursuant to Fla. Stat., § 760.11(5), to recover reasonable attorney's fees and costs.

WHEREFORE, Plaintiff demands the entry of judgment in her favor and against WMTEC as follows:

a)      Permanently enjoining WMTEC, its officers, agents, servants, employees and all other persons in active concert or participation with WMTEC from violating the FCRA's prohibition against religious discrimination as to Plaintiff, and directing WMTEC to reinstate Plaintiff with full seniority and benefits or provide front pay in lieu of reinstatement, or otherwise make Plaintiff whole;

b)      Ordering WMTEC to institute and carry out policies, practices, and programs which provide equal employment opportunities for persons of all religious beliefs, and which eradicate the effects of the past and present unlawful discrimination practices by WMTEC;

LAW OFFICE OF LOWELL J. KUVIN
17 EAST FLAGLER STREET · SUITE 223 · MIAMI, FLORIDA 33131 · TEL.: 305.358.6800 · FAX: 305.358.6808

c)      Awarding Plaintiff back pay and benefits to which she would have been entitled but for WMTEC's discriminatory acts;

d)      Awarding Plaintiff damages for emotional distress, humiliation, emotional pain and suffering, mental anguish, loss of dignity, loss of enjoyment of life, inconvenience and other intangible injuries and non-pecuniary losses;

e)      Awarding Plaintiff compensatory and punitive damages;

f)      Awarding Plaintiff pre-judgment interest; and

g)      Awarding Plaintiff her costs and reasonable attorney's fees pursuant to Fla. Stat., § 760.11(5).

## COUNT IV
## AGE DISCRIMINATION IN VIOLATION OF ADEA

138.    Plaintiff repeats, re-alleges and reincorporates the allegations of paragraphs 1-30, 58-64, 96 as if set forth fully at length, and alleges:

139.    Plaintiff's age (45-46 years old at the time) was a but-for cause of Mrs. Pennell's discriminatory treatment of Plaintiff in violation of the ADEA.

140.    Plaintiff's age was a substantial, motivating factor in Mrs. Pennell's treatment of her.

141.    Mrs. Pennell engaged in a pattern and practice of age discrimination against Plaintiff.

142.    Mrs. Pennell was an officer of WMTEC and her age discriminatory treatment of Plaintiff occurred in her capacity as an officer of WMTEC.

143.    WMTEC's other management was aware of Mrs. Pennell's age discriminatory treatment of Plaintiff.

24

144.     Despite Plaintiff's complaint or attempts to complain of the age discrimination, Mrs. Pennell did not correct her age discriminatory treatment and the discrimination continued.

145.     As set forth above, WMTEC's management was aware of Mrs. Pennell's age discriminatory treatment of Plaintiff.

146.     WMTEC knew or should have known that Mrs. Pennell was engaging in a pattern and practice of age discrimination against Plaintiff.

147.     Mrs. Pennell's discriminatory conduct, as more particularly alleged above, violated the statutory rights of Plaintiff under the ADEA against age discrimination, damaged Plaintiff and is continuing to cause her irreparable harm for which there is no adequate remedy at law.

148.     As a direct, natural and proximate result of age discriminatory statements and conduct by Mrs. Pennell, Plaintiff has suffered damages including, but not limited to, emotional distress, humiliation, emotional pain and suffering, mental anguish, loss of dignity, loss of enjoyment of life, inconvenience and other intangible injuries and non-pecuniary losses.

149.     The age-discriminatory conduct and statements towards Plaintiff were willful and intentional, entitling her to liquidated damages.

150.     Plaintiff is entitled, pursuant to 29 U.S.C. § 216(b), to recover reasonable attorney's fees and costs.

WHEREFORE, Plaintiff demands the entry of judgment in her favor and against Defendant as follows:

a)      Permanently enjoining Mrs. Pennell and WMTEC, its officers, agents, servants, employees and all other persons in active concert or participation with it from violating

25

the ADEA's prohibition against age discrimination as to Plaintiff, and directing WMTEC to reinstate Plaintiff with full seniority and benefits or provide front pay in lieu of reinstatement, or otherwise make Plaintiff whole;

b)      Ordering Mrs. Pennell and WMTEC to institute and carry out policies, practices, and programs which provide equal employment opportunities for individuals 40 years of age and older, and which eradicate the effects of Mrs. Pennell's and WMTEC's past and present unlawful discrimination practices;

c)      Awarding Plaintiff back pay and benefits to which she would have been entitled but for Mrs. Pennell's and WMTEC's age discriminatory acts;

d)      Awarding Plaintiff damages for emotional distress, humiliation, emotional pain and suffering, mental anguish, loss of dignity, loss of enjoyment of life, inconvenience and other intangible injuries and non-pecuniary losses;

e)      Awarding Plaintiff liquidated damages;

f)      Awarding Plaintiff prejudgment interest; and

g)      Awarding Plaintiff her costs and reasonable attorney's fees pursuant to 29 U.S.C. § 216(b).

## COUNT V
## AGE DISCRIMINATION IN VIOLATION OF FLORIDA CIVIL RIGHTS ACT

151.     Plaintiff repeats, re-alleges and reincorporates the allegations of paragraphs 1-30, 58-64, 96 as if set forth fully at length, and alleges:

152.     Plaintiff's age (45-46 years old at the time) was a but-for cause of her treatment by Mrs. Pennell in violation of the FCRA.

26

153.    Mrs. Pennell engaged in a pattern and practice of age discrimination against Plaintiff.

154.    Mrs. Pennell was an officer of WMTEC and her age discriminatory treatment of Plaintiff occurred in her capacity as an officer of WMTEC.

155.    WMTEC's other management was aware of Mrs. Pennell's age discriminatory treatment of Plaintiff.

156.    Despite Plaintiff's complaint or attempts to complain of the age discrimination, Mrs. Pennell did not correct her age discriminatory treatment and the discrimination continued.

157.    As set forth above, WMTEC's management was aware of Mrs. Pennell's age discriminatory treatment of Plaintiff.

158.    WMTEC knew or should have known that Mrs. Pennell was engaging in a pattern and practice of age discrimination against Plaintiff.

159.    The discriminatory conduct and statements by Mrs. Pennell, as more particularly alleged above, violated the Florida statutory rights against age discrimination as to Plaintiff, damaged her and is continuing to cause her irreparable harm for which there is no adequate remedy at law.

160.    The age-discriminatory conduct and statements by Mrs. Pennell proximately, directly, and foreseeably caused Plaintiff damages including, but not limited to, lost wages and benefits.

161.    The age discriminatory conduct by Mrs. Pennell towards Plaintiff was willful, wanton and in flagrant disregard of Plaintiff's statutorily protected rights against age discrimination, so as to justify punitive damages.

27

162.    As a direct, natural and proximate result of the age discriminatory conduct and statements by Mrs. Pennell, Plaintiff has suffered damages, including but not limited to, lost wages and benefits, future pecuniary losses, emotional distress, humiliation, emotional pain and suffering, mental anguish, loss of dignity, loss of enjoyment of life, inconvenience and other intangible injuries and non-pecuniary losses.

163.    Plaintiff is entitled, pursuant to Fla. Stat., § 760.11(5), to recover reasonable attorney's fees and costs.

WHEREFORE, Plaintiff demands the entry of judgment in her favor and against Mrs. Pennell and WMTEC as follows:

a)    Permanently enjoining Mrs. Pennell and WMTEC, its officers, agents, servants, employees and all other persons in active concert or participation with Mrs. Pennell and WMTEC from violating the FCRA's prohibition against age discrimination as to Plaintiff, and directing WMTEC to reinstate Plaintiff with full seniority and benefits or provide front pay in lieu of reinstatement, or otherwise make Plaintiff whole;

b)    Ordering Mrs. Pennell and WMTEC to institute and carry out policies, practices, and programs which provide equal employment opportunities for individuals 40 years of age and older, and which eradicate the effects of the past and present unlawful discrimination practices by Mrs. Pennell and WMTEC;

c)    Awarding Plaintiff damages for emotional distress, humiliation, emotional pain and suffering, mental anguish, loss of dignity, loss of enjoyment of life, inconvenience and other intangible injuries and non-pecuniary losses;

28

d)     Awarding Plaintiff back pay and benefits to which she would have been entitled but for Defendants' age discriminatory acts;

e)     Awarding Plaintiff compensatory and punitive damages;

f)     Awarding Plaintiff pre-judgment interest; and

g)     Awarding Plaintiff her costs and reasonable attorney's fees pursuant to Fla. Stat., § 760.11(5).

## COUNT VI
## RETALIATORY HOSTILE WORK ENVIRONMENT IN VIOLATION OF TITLE VII

164.    Plaintiff repeats, re-alleges and reincorporates the allegations of paragraphs 1-83, 96 as if set forth fully at length, and alleges:

165.    Plaintiff was subjected to a retaliatory hostile work environment by Defendants in the form of age discrimination, religious discrimination and hostile and abusive treatment.

166.    The repeated age discrimination, religious discrimination and hostile and abusive treatment was severe and pervasive and was intended to, and did in fact, humiliate and intimidate Plaintiff.

167.    The repeated age discrimination, religious discrimination and hostile and abusive treatment created a hostile work environment.

168.    The repeated age discrimination, religious discrimination and hostile and abusive treatment unreasonably interfered with Plaintiff's performance of her job.

169.    Mrs. Pennell was an officer of WMTEC and her age discrimination, religious discrimination and hostile and abusive treatment of Plaintiff occurred in her capacity as an officer of WMTEC.

Law Office of Lowell J. Kuvin
17 East Flagler Street · Suite 223 · Miami, Florida 33131 · Tel.: 305.358.6800 · Fax: 305.358.6808

170.    Mr. Pennell was CEO of WMTEC and his religious discrimination and hostile and abusive treatment of Plaintiff occurred in his capacity as an officer of WMTEC.

171.    WMTEC's management was aware of Mrs. Pennell's age discrimination, religious discrimination and hostile and abusive treatment of Plaintiff.

172.    WMTEC's management was aware of Mr. Pennell's religious discrimination and hostile and abusive treatment of Plaintiff.

173.    WMTEC's officers, management and employees were aware of their religious discriminatory treatment of Plaintiff.

174.    As a result of their actions against Plaintiff, Defendants have violated 42 U.S.C. § 2000e-2(a).

WHEREFORE, Plaintiff demands the entry of judgment in her favor and against Defendants as follows:

a)      Awarding Plaintiff back pay, front pay and benefits to which she would have been entitled but for Mrs. Pennell's and WMTEC's age discriminatory acts;

b)      Awarding Plaintiff damages for emotional distress, humiliation, emotional pain and suffering, mental anguish, loss of dignity, loss of enjoyment of life, inconvenience and other intangible injuries and non-pecuniary losses;

c)      Awarding Plaintiff liquidated damages;

d)      Awarding Plaintiff prejudgment interest; and

e)      Awarding Plaintiff her costs and reasonable attorney's fees pursuant to 42 U.S.C. § 2000e-5(k).

LAW OFFICE OF LOWELL J. KUVIN

17 EAST FLAGLER STREET · SUITE 223 · MIAMI, FLORIDA 33131 · TEL.: 305.358.6800 · FAX: 305.358.6808

## COUNT VII
### FAILURE TO PAY OVERTIME WAGE COMPENSATION
### IN VIOLATION OF THE FLSA, 29 U.S.C. § 201, *et seq*

175.   Plaintiff re-alleges, readopts and reincorporates paragraphs 1-30, 84-96 as though set forth fully herein and further alleges as follows:

176.   Defendants willfully and intentionally failed to pay Plaintiff any overtime wages during her employment.

177.   Defendants therefore owe Plaintiff the full overtime wage for each hour worked in excess of forty hours in a week.

178.   As a direct and proximate result of Defendants' failure to pay Plaintiff any overtime wages, Plaintiff has been damaged for one or more weeks of work with Defendants.

WHEREFORE, Plaintiff demands the entry of judgment in her favor and against Defendants as follows:

a)   Award Plaintiff payment for all hours worked in excess of forty in a week at the full overtime wage due her under the FLSA for the hours she worked;

b)   Award Plaintiff liquidated damages equal to the payment for all overtime hours at the full overtime wage owed under the FLSA or, if liquidated damages are not awarded, then prejudgment interest;

c)   Award Plaintiff reasonable attorneys' fees and costs;

d)   Judgment entered in favor of Plaintiff against Defendants for payment for all hours worked in excess of forty hours per week at the full overtime rate for which Plaintiff was not compensated, liquidated damages, attorneys' fees, costs, and all interest allowed by law; and

Law Office of Lowell J. Kuvin
17 East Flagler Street · Suite 223 · Miami, Florida 33131 · Tel.: 305.358.6800 · Fax: 305.358.6808

e)  Award such other and further relief as this Court may deem just and proper.

## COUNT VIII
## <u>DECLARATION OF RIGHTS</u>

179.    Plaintiff re-alleges, readopts and reincorporates paragraphs 1-30, 84-96 as though set forth fully herein and further alleges as follows:

180.    Plaintiff and Defendants have a pending dispute under the FLSA, which this Court has jurisdiction to decide pursuant to 29 U.S.C. § 1331.  The Court also has jurisdiction over Plaintiff's request for a declaration of rights pursuant to 29 U.S.C. §§ 2201, 2202.

181.    Defendants have other employees who are similarly not paid overtime in violation of the FLSA.

182.    Defendants did not rely on a good faith defense under the FLSA in failing to pay Plaintiff her overtime wages for the hours that she worked for Defendants.

183.    A declaration of rights would serve the useful purpose of clarifying and settling the legal relations at issue.

184.    The entry of a declaration of the rights of the parties herein would afford relief from uncertainty, insecurity, and controversy giving rise to this proceeding as affecting Plaintiff and Defendants now and in the future.

WHEREFORE, Plaintiff demands the entry of judgment in her favor and against Defendants as follows:

a)  Issue declaratory judgment that Defendants' acts, policies, practices and procedures complained of herein violated the provisions of the FLSA;

b)  Enjoin Defendants from further violations of the FLSA;

c)  Award Plaintiff costs; and

32

d)  Award such other and further relief as this Court may deem just and proper.

## COUNT IX
## <u>UNJUST ENRICHMENT</u>

185.    Plaintiff re-alleges, readopts and reincorporates paragraphs 1-30, 84-96 as though set forth fully herein and further alleges as follows:

186.    Plaintiff has conferred a benefit upon Defendants by working for Defendants.

187.    Defendants and their representatives knew that Plaintiff was working for Defendants over 40 hours per week.

188.    During all times relevant hereto, Defendants had knowledge that Plaintiff was furnishing such benefit upon Defendants because Plaintiff was in Defendants' employ.

189.    Defendants voluntarily accepted and retained the benefit conferred by Plaintiff by her working for Defendants.

190.    Defendants have failed to timely or properly pay Plaintiff her agreed upon overtime pay, and have refused to pay Plaintiff same.

191.    The circumstances render Defendants' retention of the benefit inequitable unless Defendants pay Plaintiff the value of the benefit.

192.    Defendants have been unjustly enriched in that Defendants have failed and refused to pay Plaintiff her overtime wages.

193.    Plaintiff is entitled to damages as a result of Defendants' unjust enrichment.

WHEREFORE, Plaintiff demands the entry of judgment in her favor and against Defendants as follows:

a)      Award Plaintiff the amount of her unpaid overtime wages;

b)      Award Plaintiff pre-judgment interest;

33

c)      Award Plaintiff costs; and

d)      Award such other and further relief as this Court may deem just and proper.

## COUNT X
## <u>DEFAMATION</u>

194.    Plaintiff re-alleges, readopts and reincorporates paragraphs 1-30, 96 as though set forth fully herein and further alleges as follows:

195.    During the company-wide meeting on Saturday, June 21, 2014, Defendants made false statements regarding Plaintiff to all of the other company employees present.

196.    These statements included false accusations that Plaintiff has been involved in a "security breach"; that the other employees should be wary of their credit reports and personal information because Plaintiff had misappropriated their personal information; that Plaintiff may attempt to harm them through identity theft; and that WMTEC would pay for credit monitoring for all employees in order to prevent same.

197.    The aforementioned statements against Plaintiff were patently false and defamatory, and Defendants published these false and defamatory statements without reasonable care to determine their falsity.

198.    Defendants knew or should have known that the aforementioned statements against Plaintiff were patently false and defamatory.

199.    The aforementioned statements against Plaintiff were unprivileged publications to third parties.

200.    The falsity of the aforementioned statements published by Defendants against Plaintiff caused Plaintiff damages and special damages in that Plaintiff's chosen profession is a

34

bookkeeper whose profession requires any employer to trust her with financial and personal information about its business and its employees.

WHEREFORE, Plaintiff demands the entry of judgment in her favor and against Defendants as follows:

a) Award Plaintiff damages as a result of Defendants' false and defamatory statements;

b) Award Plaintiff additional damages as a result of the special harm that Defendants' false and defamatory statements caused Plaintiff as a bookkeeper;

c) Award Plaintiff pre-judgment interest;

d) Award Plaintiff costs; and

e) Award such other and further relief as this Court may deem just and proper.

### Demand for Jury Trial

Plaintiff demands trial by jury on all issues so triable.

Respectfully Submitted July 28, 2015,

/s Sundeep K. Mullick, Esq.
Sundeep K. Mullick
Fla. Bar No.: 18175
sunny@kuvinlaw.com
lowell@kuvinlaw.com
esther@kuvinlaw.com
Law Office of Lowell J. Kuvin, LLC
17 East Flagler St., Suite 223
Miami, Florida 33131
Tel:     305.358.6800
Fax:     305.358.6808
*Attorneys for Plaintiff*