UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
(West Palm Beach Division)

CASE NO. 9:15-cv-81056-RLR

ANGELA LAMBERT,

    Plaintiff,

vs.

WORLDWIDE MARKETING
TECHNOLOGIES CORPORATION
and CLAUDINA PENNELL and
DANIEL PENNELL,

    Defendants.
_____/

## DEFENDANTS' MOTION FOR DISCOVERY SANCTIONS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 37

Defendants, WORLDWIDE MARKETING TECHNOLOGIES CORPORATION, (hereafter "WMTek"), CLAUDINA PENNELL AND DANIEL PENNELL, by and through its undersigned counsel and pursuant to the Federal Rules of Civil Procedure 37(B)(2)(a) and 37(d)(3), hereby move this Court for sanctions against the Plaintiff, Angela Lambert, for inappropriate conduct and willful refusal to comply with the Court's Order on discovery. The Defendants move this Court for an Order striking Counts VII and IX of Plaintiff's Complaint for failure to pay overtime wages and/or striking a document created by Plaintiff to support the allegations within Counts VII and IX of Plaintiff's Complaint, as having no basis in fact due to Plaintiff's refusal to produce discovery.

Count VII of the Plaintiff's Complaint is an allegation of FAILURE TO PAY OVERTIME WAGE COMPENSATION IN VIOLATION OF THE FLSA. Within Count VII, it is alleged that the Defendants failed to pay overtime hours to the plaintiff "in excess of 54 hours." (Plaintiff Complaint ¶88). Also, Count IX is an allegation of UNJUST ENRICHMENT, and is based on the exact same

1

argument of failure to pay overtime wages. Plaintiff testified that she has no document, time sheet, email or correspondence from WMTek that establishes any unpaid overtime hours, (A. Lambert depo. p. 217, 221). She testified that her claim is based on a "spreadsheet" that she "kept at home" and "prepared on her home computer," (A. Lambert depo. p. 215-216, 221-222). This spread sheet is the only "evidence" the Plaintiff has to support the claims of overtime pay. Plaintiff has refused all efforts and attempts by the defense to conduct discovery on the origin and creation date of her home-made evidence. (Referenced deposition pages are attached hereto as an exhibit A).

Plaintiff was ordered by Judge Brannon to appear with her computer for an inspection, and she still refused, and sent an e-mail that is vile and extreme. In her June 9, 2016 e-mail to undersigned counsel refusing to cooperate with Judge Brannon's Order, she used extremely inappropriate and unprofessional language, demonstrating her willfulness and bad faith for the discovery process. She accused counsel and Defendant, Dan Pennell, of being "rapists," as members of "ISIS," alleging a "gang-rape," describing conduct that is "sadomasochistic," and insinuating that defense counsel and Mr. Pennell wish to "handcuff and bury" her. The preceding words do not fully do justice to the words and descriptions used by Ms. Lambert in her June 9, 2016 e-mail, so the entire e-mail chain is attached hereto for review as an exhibit B.

To verify the accuracy of the Plaintiff's allegation of her "home created" spreadsheet, the defense made a discovery request of a digital copy of Plaintiff's "personal accounting" spreadsheet and an inspection of her home laptop computer to establish when her "personal accounting" was created and when it was edited. Plaintiff answered by stating that the document does not exist on her computer, and she refused to produce her computer. The defense scheduled an appropriate discovery hearing with Judge Brannon on June 2, 2016, and Plaintiff testified at the discovery hearing that she actually created the document on an "open-source" web site in "the cloud." When asked to identify the "open-source"

2

vendor and her log-in credentials so that the document could be viewed and inspected, she testified that she "forgot" the source and "forgot" all of her log-in credentials to view the document. Judge Brannon ordered her to appear the following week and produce her personal computer so that the defense could inspect it for any traces of the document. She testified that she threw away the computer she used to create the spreadsheet, and a copy of the spreadsheet document does not exist on her new computer. She was ordered to produce the new personal computer so that it can be checked for any trace of the disputed document. Pursuant to Judge Brannon's discovery Order, a date and time was scheduled for the computer inspection. Plaintiff again refused to appear at the scheduled discovery inspection date of June 10, 2016.

Federal Rule of Civil Procedure 37(d)(1)(A)(i) allows this Court broad discretion to strike all or part of a party's claim when the party refuses to comply with Court orders, United States v. Jean, 2016 U.S. Dist. Lexis 23783 (S.D. Fla. 2016). There can be no question that Plaintiff's conduct in this matter regarding the "home made" spread sheet, the digital copy thereof and also the inspection of her computer, has been willful, deliberate and in bad faith. The Defendants have been prevented from any chance of reviewing or inspecting Plaintiff's only proof regarding her FLSA claim. As such, the proper course would be to strike the spread sheet that Plaintiff admits she made at home as her only proof of an overtime-wage claim, and/or strike Counts VII and IX from her Complaint.

Sanctions of striking a pleading or claims are warranted when the party willfully fails to comply with discovery orders. United States v. Francois, 2015 U.S. Dist. Lexis 172979 (S.D. Fla. 2015). In Axiom Worldwide, Inc. v. Excite Medical Corp., 591 Fed. Appx. 767 (11th Cir. 2014), the court noted that two parties intentionally disobeyed discovery orders, destroyed a computer and altered financial records. As such, they "engaged in egregious discovery misconduct that had seriously prejudiced Axiom's ability to prosecute its lawsuit." Rule 37 "permits a district court to impose sanctions on a

party that fails to obey an order or provide or permit discovery." Id. at 774. In this case, the Defendants have been prevented by Plaintiff from conducting discovery on her "home made" spread sheet, the software, the cloud source and the computer. Because of the Plaintiff's willful and deliberate actions, the defense is prevented from discovering the basis of the document, and whether it was actually prepared during her employment, or created after-the-fact to support a false claim for overtime wages. As such, the document and the claims based upon the document found in Counts VII and IX of the Complaint, should be stricken.

Rule 37(b)(2)(ii) specifically states that the disobedient party is prohibited "from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence." Subsection (iii) further states that a pleading can be stricken "in whole or in part." Subsections (v) and (vii) allow for the dismissal of the whole matter and holding the disobedient party in contempt. The Eleventh Circuit in Aztec Steel Company v. Florida Steel Corp., 691 F.2d 480 (11th Cir. 1982), stated that "Rule 37 sanctions are imposed not only to prevent unfair prejudice to the litigants but also to insure the integrity of the discovery process." Id. at 482.

In Hosch v. BAE Systems Information Solutions, Inc., 2014 U.S. Dist. Lexis 57574 (E.D. Va. 2014), the plaintiff therein was ordered to produce for inspection his electronic equipment, including his computer, cell phone and e-mail account, for a forensic examination for pertinent documents. Plaintiff refused to comply with the inspection and also deleted or altered electronic information on his computer. The court recognized that the plaintiff's actions "denied the defendant a fair opportunity to participate in discovery and crippled its ability to properly prepare its defenses to plaintiff's claims." That court recognized that a district court "has nearly unfettered discretion" to "impose sanctions for failure to comply with its discovery orders." As such, the court can "prohibit the disobedient party from supporting" claims, or "strike pleadings in whole or in part," or "dismiss the action in whole or in part."

4

In the Hosch case, the district court ordered that the plaintiff's entire claim be dismissed with prejudice, and also granted monetary sanctions for the costs and expenses of attending the various motions. In this case, Plaintiff Lambert's conduct is no different. In the least, this Court should strike the admissibility and the Plaintiff's use of the spread sheet document allegedly supporting her claims in Counts VII and IX. It would be patently unfair for the defense to respond or defend such a document without any ability to discover its foundation. The Defendants respectfully request the relief this Court deems appropriate in light of the extreme and vile conduct of the Plaintiff, and in light of the harsh prejudice the Defendants face of defending against a document and claims that they cannot properly discover, the Plaintiff's home made spreadsheet allegedly depicting unpaid overtime hours, as well as Counts VII and IX of the Complaint should be stricken and dismissed.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I have filed this document with the Court using the CM/ECF system on this 10th day of June, 2016, with an email copy to Plaintiff at angelamarielambert@yahoo.com.

/s/ *Jeffrey D. Thompson*
Jeffrey D. Thompson, Esq.
Florida Bar No.: 64089
Hurley, Rogner, Miller, Cox & Waranch, P.A.
1560 Orange Avenue, Ste. 500
Winter Park, FL 32789
(407) 571-7400
(407) 571-7401 (fax)
E-mail: jthompson@hrmcw.com
Secondary E-mail: ybayala@hrmcw.com
*Attorney for Defendants*

5

```
                    UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF FLORIDA
                      (West Palm Beach Division)

                    CASE NO.:   9:15-cv-81056-RLR

ANGELA LAMBERT,                    )
                                   )
                    Plaintiff,     )
vs.                                )
                                   )
WORLDWIDE MARKETING                )
TECHNOLOGIES CORPORATION           )
and                                )
CLAUDINA PENNELL                   )
and                                )
DANIEL PENNELL,                    )
                    Defendants.    )
_____)

                         VOLUME II
              DEPOSITION OF ANGELA M. LAMBERT

DATE:              April 14, 2016

TIME:              10:05 o'clock a.m.

PLACE:             201 S.W. Port St. Lucie Blvd., Suite 208
                   Port St. Lucie, Florida 34984

TAKEN BY:          Defendants

REPORTER:          CHERYL LEE SOKOL, RPR, CP, Notary
                   Public of State of Florida at Large

APPEARANCES:

FOR PLAINTIFF:     LAW OFFICE OF LOWELL J. KUVIN, LLC
                   17 E. Flagler Street, Suite 223
                   Miami, FL   33131
                   BY: SUNDEEP K. MULLICK, ESQ.

FOR DEFENDANTS:    HURLEY, ROGNER, MILLER, COX
                   & WARANCH, P.A.
                   1560 Orange Avenue, Suite 500
                   Winter Park, FL   32789
                   BY: JEFFREY D. THOMPSON, ESQ.

ALSO PRESENT:      DANIEL PENNELL
```

EXHIBIT A

Page 115

1  A. Gosh, I can't remember everything because it's
2  been, like, what, almost two years ago. I can't remember
3  everything.
4  Q. So was the golf at the Saints Golf Course and the
5  birthday party on the same day?
6  A. I can't remember.
7  Q. You know you're under oath.
8  A. I can't remember if it was on the same day. It's
9  been over a year ago. I would have to look at things that
10 would remind me.
11 Q. What did you do on that Sunday?
12 A. Church.
13 Q. Where do you go to church?
14 A. We go to a lot of churches. My dad is a
15 itinerary minister, so we travel to different churches. We
16 go to church almost every Sunday. I don't know which one
17 we went to.
18 Q. On June 22nd, 2014, do you know which church
19 you went to?
20 A. It could have been an Assemblies of God Church,
21 but I don't know. It -- I think it might have been one,
22 but -- one of them here in Port St. Lucie, but I can't be
23 sure.
24 Q. What time did the golf start on Saturday?
25 A. It usually started, I want to say -- we were in

Page 116

1  the last group. I would say somewhere around 11:00, but
2  I'm not sure. It could have been later.
3       MR. MULLICK: A.m.?
4       THE WITNESS: Yes.
5       MR. MULLICK: You have to be clear for the
6  record.
7       THE WITNESS: Sorry.
8  BY MR. THOMPSON:
9  Q. Why did you take the company computer home on
10 Friday, June the 20th?
11 A. I took the computer home every night, so that was
12 just a thing I did. I took the computer home every night
13 after work because Dan told me never to leave it on the
14 property. It was consigned to me. It was my WMtek
15 computer to guard, work off of.
16 Q. You took it home to guard it?
17 A. I took it home for both reasons, to work on it
18 and to -- it was consigned to me as my company computer.
19 He told me never to leave it on WMtek property. Nobody
20 left their computers on WMtek property. They all took them
21 home.
22 Q. What other employee had financial information and
23 QuickBooks information on their computers?
24      MR. MULLICK: I object to the form.
25      THE WITNESS: Nobody that I know of.

Page 117

1  BY MR. THOMPSON:
2  Q. So you said you took the computer home to guard
3  it and to work on it. What work did you do on it over the
4  weekend, June the 22nd?
5  A. I couldn't tell you at this point. I don't
6  remember.
7  Q. Did you do bookkeeping work on your computer at
8  home?
9       MR. MULLICK: Object to the form.
10      THE WITNESS: On my personal computer at
11 home?
12 BY MR. THOMPSON:
13 Q. No. On the WMtek computer that was taken home
14 that weekend.
15 A. I could have. I'm not sure. I have no idea. I
16 can't remember.
17      (Defendants' Exhibit No. 20 was marked for
18      identification.)
19 BY MR. THOMPSON:
20 Q. Let me show you the next document which we'll
21 mark as Exhibit 20 to the deposition. Do you recognize
22 Exhibit 20 as a Skype log between Angela Lambert and
23 crazyclaude1?
24 A. I don't know if it's a Skype or what it is. I'm
25 not sure, but I see my name.

Page 118

1  Q. Okay. Do you remember having a Skype
2  conversation with Claudina Pennell on June the 4th, 2014?
3  A. I could have.
4  Q. Do you see there on June the 4th, 2014 at 1:03
5  you sent a message to Claudina, indicating that you were
6  chatting with Intuit at 6:30 p.m. in the evening the night
7  before?
8  A. Yes.
9  Q. And is it true and correct at 1:10 Claudina
10 responded and said, "I know you have been working on
11 scheduling/travel at home in the evenings because you
12 prefer to do it that way, but as far as anything that has
13 to do with bookkeeping, Dan and I would prefer it be done
14 in the office and not taken home to do. All the info is
15 very sensitive and personal and it is best to take care of
16 all of those tasks during office hours"?
17 A. Yes, I read that.
18 Q. And you recall that was the instruction that
19 Claudina gave to you on June 4th?
20 A. I never paid attention to this, and the first
21 time that I was made aware that this was in here was
22 actually in the DEO hearing, so I had never really paid
23 attention to it.
24      I, basically, ignored it because Dan was my boss.
25 Dan told me I could take my computer home. Dan told me the

**Page 119**

1  things that I could work on, which was everything that --
2  bookkeeping, travel, everything. And it wasn't because I
3  preferred it. It was because Dan said I could when he
4  hired me. I was allowed to do all of this. I was given
5  clearance to do all of this.
6       Claudina, again, was trying to change something
7  that Dan had already said, as my boss, that I could do.
8    Q.  Did you believe or think that it was improper for
9  Claudina to be changing things?
10   A.  Yes.
11   Q.  How so?
12   A.  Because, again, she was not my boss. She was not
13  my supervisor. Dan was. Dan was the only person that I
14  reported to.
15      This did not come from Dan. And she did this all
16  the time, so it was just another thing that I really didn't
17  even pay any attention to.
18   Q.  Let's see here. I want to refer back to Exhibit
19  13, if I can find that in this stack.
20      I hand you Exhibit 13 that we talked about
21  earlier, and if you look on the second page there, isn't it
22  true, ma'am, that on May 28th Dan Pennell sent you this
23  e-mail, in response to an e-mail you sent him, and said,
24  "No tension at all. Claudina has always been the first
25  point of contact and manager of the bookkeeping and

**Page 120**

1  accounting responsibilities in the office." Isn't it true
2  that's what he told you on May 28th?
3    A.  He wrote that, and "the first point of contact
4  and manager," and I was trying to have a meeting with him
5  from that point when I said earlier in my testimony that I
6  had tried to get a meeting with Dan earlier and talk about
7  this because this was not what he said when he hired me.
8       And that's what I went to him ultimately about on
9  the 20th, June 20th, when I wanted to bring all of these
10  issues to Dan was the answer to this e-mail, which
11  completely shocked me.
12      And when he said "first point of contact," that
13  doesn't say "supervisor." That doesn't say "boss."
14      And "manager of the bookkeeping and accounting
15  responsibilities," I didn't even understand that.
16   Q.  So you didn't think that meant that Claudina was
17  your supervisor or boss in any way?
18   A.  No. That was completely unclear to me.
19   Q.  What did you think it meant?
20   A.  I think -- I thought that he was out of his mind,
21  basically, that that's not what he said to me. He
22  completely lied to me. I didn't know where he was coming
23  from.
24   Q.  So after Dan sent you the e-mail on May the
25  28th, and you received the message on June the 4th from

**Page 121**

1  Claudina, you felt at that point you could just disregard
2  it because that's not what Dan told you when he first
3  interviewed with you; is that what you are saying?
4       MR. MULLICK: Object to the form.
5       THE WITNESS: You are trying to combine two
6    different e-mails, which says this one has
7    nothing to do with the computer, or taking the
8    computer home or doing work at home. This
9    doesn't say any of that in this e-mail.
10      And then the -- I don't even know what you
11   said, the other part. What is the question?
12  BY MR. THOMPSON:
13   Q.  The May 28th e-mail that Dan Pennell sent to
14  you said, "Claudina is the manager of the bookkeeping and
15  accounting department," correct?
16      MR. MULLICK: Object to the form.
17  BY MR. THOMPSON:
18   Q.  "The manager of the bookkeeping and accounting
19  responsibilities in the office;" is that what it says?
20      MR. MULLICK: Object to the form.
21      THE WITNESS: That's what it reads.
22  BY MR. THOMPSON:
23   Q.  And then you get the message from Claudina on
24  June the 4th that says, "Dan and I would prefer that the
25  bookkeeping be done in the office, and not be taken home to

**Page 122**

1  do"?
2    A.  Dan never told me that.
3    Q.  So since Claudina told you this on June the 4th,
4  you felt like you could ignore it because it's something
5  different than what Dan told you, back when you were hired?
6    A.  Dan was my boss. He was my supervisor.
7    Q.  Is that correct, you felt like you could just
8  ignore it because Claudina wasn't your boss?
9    A.  I did ignore it. Claudina was not my boss.
10      (Discussion held off the record.)
11      THE WITNESS: Can I clarify something for
12   the record?
13      MR. THOMPSON: No, ma'am.
14      MR. MULLICK: Okay. Just wait for his
15   questions.
16      MR. THOMPSON: I'm sorry. Your attorney,
17   for the record, just whispered in your ear and
18   told you to say something. That's not proper for
19   him to clarify that on the record. That's not
20   your testimony.
21      MR. MULLICK: And I want to respond to what
22   you just said. I can take a break, if I want,
23   and tell her anything I want so...
24      MR. THOMPSON: You can't tell her how to
25   testify.

## Jeff Thompson

**From:** Jeff Thompson
**Sent:** Friday, June 03, 2016 1:37 PM
**To:** 'Angela Lambert'
**Cc:** Brenda Staudte
**Subject:** computer inspection

Ms. Lambert, pursuant to your statement to the federal judge yesterday that you will be available next Friday, June 10, 2016, I would like to schedule the viewing on that day. I propose 10:00 am, but if a better time works for you, please let me know. I will arrange for the same court reporter office for the inspection.

**Jeff Thompson**
Attorney at Law



jthompson@hrmcw.com   www.hrmcw.com
**Central Florida Office**

1560 Orange Avenue Suite 500 Winter Park, FL 32789
Main: 407-571-7400   Fax: 407-571-7401

**Space Coast, Treasure Coast & Palm Beaches** (772) 489-2400
**South Florida** (954) 580-1500
**North Florida** (850) 222-1200
**Southwest Florida** (239) 939-2002
**Atlanta, GA** (404) 459-2722

**Confidentiality Disclaimer:** This e-mail message and any attachments are private communication sent by a law firm, Hurley, Rogner, Miller, Cox, Waranch & Westcott, P.A., and may contain confidential, legally privileged information meant solely for the intended recipient. If you are not the intended recipient, you are hereby notified that any use, dissemination, distribution or copying of this communication is strictly prohibited. Please notify the sender immediately by replying to this message and then delete the e-mail and any attachments. Thank you.

**Replies Filtered:** Any incoming e-mail reply to this communication will be electronically filtered for "spam" and/or "viruses." That filtering process may result in such reply being quarantined (i.e., potentially not received at our site at all) and/or delayed in reaching us. For that reason, we cannot guarantee that we will receive your e-mail reply and/or that we will receive it in a timely manner. Accordingly, you should consider sending communications to us, which are particularly important or time-sensitive by means other than e-mail



EXHIBIT B

# Jeff Thompson

**From:** Jeff Thompson
**Sent:** Tuesday, June 07, 2016 4:29 PM
**To:** 'Angela Lambert'
**Subject:** Inspection day Friday

Ms. Lambert, you have not responded to my email request. Due to the lateness of the week, I needed to schedule the court reporter and meeting place. The inspection date and time for your computer will be Friday, June 10, 2016 at 3:30 p.m. at the same court reporter's office where you appeared for your deposition. 201 SW Port St. Lucie Blvd., Suite 108. Please bring your current personal computer along with any power cords and attached monitors, hard drives and storage devices used with your computer. Thank you.

**Jeff Thompson**
Attorney at Law



jthompson@hrmcw.com   www.hrmcw.com
**Central Florida Office**

1560 Orange Avenue Suite 500 Winter Park, FL 32789
Main: 407-571-7400   Fax: 407-571-7401

**Space Coast, Treasure Coast & Palm Beaches**   (772) 489-2400
**South Florida**   (954) 580-1500
**North Florida**   (850) 222-1200
**Southwest Florida**   (239) 939-2002
**Atlanta, GA**   (404) 459-2722

**Confidentiality Disclaimer:** This e-mail message and any attachments are private communication sent by a law firm, Hurley, Rogner, Miller, Cox, Waranch & Westcott, P.A., and may contain confidential, legally privileged information meant solely for the intended recipient. If you are not the intended recipient, you are hereby notified that any use, dissemination, distribution or copying of this communication is strictly prohibited. Please notify the sender immediately by replying to this message and then delete the e-mail and any attachments. Thank you.

**Replies Filtered:** Any incoming e-mail reply to this communication will be electronically filtered for "spam" and/or "viruses." That filtering process may result in such reply being quarantined (i.e., potentially not received at our site at all) and/or delayed in reaching us. For that reason, we cannot guarantee that we will receive your e-mail reply and/or that we will receive it in a timely manner. Accordingly, you should consider sending communications to us, which are particularly important or time-sensitive by means other than e-mail

1

**Jeff Thompson**

| | |
|---|---|
| **From:** | Angela Lambert <angelamarielambert@yahoo.com> |
| **Sent:** | Wednesday, June 08, 2016 7:54 AM |
| **To:** | Jeff Thompson |
| **Subject:** | Computer |

Mr. Thompson,

Pursuant to the Order (Document 53) regarding this matter, in the interest of setting "appropriate search parameters" for the referenced prospective "inspection" of Plaintiff's computer, I pose the following questions.

1. What means/criteria by which do you propose to identify a "digital file" that does not exist and thus has no name or any identification markings?
2. In that part of the parameters I am setting is that under no circumstances will I permit anyone other than me to touch and/or manipulate any computer I own, what is the precise, step-by-step, methodology and parameters (limitations) you propose for "inspecting" the computer to see if a digital file I assert does not exist, and is not and never was resident on my current computer, exists?
3. Understanding that part of the parameters I am setting is that under no circumstances will I ever permit an unlimited or unrestricted "search" of any computer I own, and the deadline for certification and identification of expert witnesses has expired, and therefore the use of any computer programs or software that expert forensic computer examiners use can be used at this time to locate or identify files and data relative to existing files, what basic operating system utility program that is typically used by the common or average user who does not possess basic or beyond the average user's knowledge (advanced knowledge) [i.e., say, Windows Explorer, or "My Documents"] do you propose to utilize to render a list of the files and folders existing on the computer, and what settings for rendering identification data (such as date stamps) do you propose to be used while using that utility program (i.e., determining the specific data properties of each file/folder is manifest, e.g., date/time of creation/modification, author, etc.)?
4. Understanding that part of the parameters I am setting is that under no circumstances will I ever permit an unlimited or unrestricted "search" of any computer I own, and the deadline for certification and identification of expert witnesses has expired, and therefore the use of any computer programs or software that expert forensic computer examiners use can be used at this time to locate or identify files and data relative to existing files, and therefore pursuant to the foregoing I will not permit any files on my computer to be "opened," what specific method or methodology do you propose be employed for you to identify the actual content of any files existing on the computer that you nominate as being the file in question?
5. Understanding that under no circumstances would I ever permit an unlimited or unrestricted "search" of any computer I own, what specific group of folders and files do you propose to limit and identify in an attempt to locate and identify the file in question?
6. Understanding that I have made my position clear – that in that I am not voluntarily offering my computer for inspection and that such an inspection or search constitutes an illegal search and seizure under Fourth Amendment of the U.S. Constitution – what specific laws or legal precedent do you cite and posit that override or take precedent over same?
7. Understanding that the deadline for certifying and identifying expert witnesses in this case has passed, and therefore under the governing rules expert witnesses, including forensic computer analysis expert witnesses, cannot be certified and identified in this case, how do you propose identifying the creation and any potential subsequent modification dates associated with any digital file(s) that you may prospectively nominate as possibly being the file in question?

8. Understanding that expert witnesses cannot be used in this case, and my assertion is and has always been that I used a cloud-based program to create and modify the document, and that the file was not saved on any cloud-based program once it was created, and the computer used for the document became non-functional and was destroyed and disposed, how do you propose to identify, access, or verify any access points (domains, websites, etc.) on the Internet associated in any way with the document and/or file in question?
9. What credentials and qualifications do you offer with regard to possessing the knowledge and expertise required for being competent to properly identify, analyze, and certify or verify any data or information pertaining to any digital files resident on my or any computer?
10. In that this issue originated via a question in my deposition which my attorney responded on my behalf requesting Defendants' counsel follow up with them concerning the issue, and my attorneys still represented me at that time, and in that they subsequently withdrew from representing me and I therefore no longer have access to them, and in that as I've stated repeatedly previously, I mailed the hard copy of this document in existence to them and to this date they have not returned to me any of the documents I provided them, and it is an impossibility for me to provide anything I do possess, have you contacted my former attorneys and inquired of them in an attempt to obtain any of the information or data you seek?
11. In that I categorically state that under no circumstances will I attend any sort of proceeding in which Defendants Dan and/or Claudina Pennell are present, or in which the number of attendees on the Defendants' side exceed the number of attendees present for the Plaintiff's side, and in that my proposal for this parameter for this prospective proceeding would be myself and the Defendants' counsel, exclusively, and in that prospective expert witnesses are barred in this case at this time, who do you propose to be the attendees of this prospective proceeding?
12. What location, date, and commencement time do you propose this prospective proceeding would take place?
13. What length of time in minutes do you propose to restrict this proceeding to?

Angela Lambert

## Jeff Thompson

**From:** Jeff Thompson
**Sent:** Thursday, June 09, 2016 9:23 AM
**To:** 'Angela Lambert'
**Subject:** RE: Computer

M'am, it is not my intent to be unfair to you, but we will conduct a full and complete inspection of your computer for any signs, evidence or history of the document in question, and/or tampering, erasing or altering of the document, the history and/or cache. As Judge Brannon stated to you, we have the right to conduct discovery on this issue, and your arguments regarding expert deadlines and Constitutional rights are not relevant here. Dan Pennell will be present. He is proficient with computers, and he will do the search of your computer. If evidence of the file/document is found, that information will be copied, photographed or recorded as evidence. Mr. Pennell will "touch" your computer to perform this search. We will also inspect the computer for signs of tampering and for signs of the "open source" program you claim to have used, as well as for dates of programs, documents and usage to establish the history and the date the computer was first put into service by you. This inspection will be conducted at the time and place identified in the notice sent to you earlier this week, (201 SW Port St. Lucie Blvd., Suite 108), which will start at 3:30 p.m. tomorrow (Friday, May 10, 2016). I cannot estimate the time frame due to not knowing what is to be found. Unless I hear otherwise from you, I will travel to the site tomorrow and meet you there for the inspection. Please present your computer and any power cords, hard drives or external equipment and log-in information/pass-codes for the inspection.
Jeff Thompson

# Jeff Thompson

| | |
|---|---|
| **From:** | Angela Lambert <angelamarielambert@yahoo.com> |
| **Sent:** | Thursday, June 09, 2016 7:25 PM |
| **To:** | Jeff Thompson |
| **Subject:** | Re: Computer |

Mr. Thompson,

Due to your response of:

*" M'am, it is not my intent to be unfair to you, but we will conduct a full and complete inspection of your computer for any signs, evidence or history of the document in question, and/or tampering, erasing or altering of the document, the history and/or cache. As Judge Brannon stated to you, we have the right to conduct discovery on this issue, and your arguments regarding expert deadlines and Constitutional rights are not relevant here. Dan Pennell will be present. He is proficient with computers, and he will do the search of your computer. If evidence of the file/document is found, that information will be copied, photographed or recorded as evidence. Mr. Pennell will "touch" your computer to perform this search. We will also inspect the computer for signs of tampering and for signs of the "open source" program you claim to have used, as well as for dates of programs, documents and usage to establish the history and the date the computer was first put into service by you. This inspection will be conducted at the time and place identified in the notice sent to you earlier this week, (201 SW Port St. Lucie Blvd., Suite 108), which will start at 3:30 p.m. tomorrow (Friday, May 10, 2016). I cannot estimate the time frame due to not knowing what is to be found. Unless I hear otherwise from you, I will travel to the site tomorrow and meet you there for the inspection. Please present your computer and any power cords, hard drives or external equipment and log-in information/pass-codes for the inspection."*

at my attempt to follow Judge Brannon's ruling to discuss the setting of appropriate search parameters in order to protect my rights to privacy and my 4th amendment right to illegal search and seizure, I will not be attending your inspection event or volunteering to allow my computer to be searched.

The way you responded is extremely violent, aggressive and has a sadomasochistic tone. You sound like someone from ISIS, not America. To pull the word "touch" as a pull quote and use it against me is extremely unnerving and sounds like you are taking a great thrill at the idea of violating me and my privacy.

Is this an assault? What kind of assault will this be? You and another man are going to gang up on me and "touch" all parts of my life and livelihood, through my computer, are you? Do you think I am going to just show up and volunteer for this kind of "gang-rape" through the "inspection" of my computer? You are out of your mind, if you think I will. Are you going to handcuff me and bury me too?

This is a civil case, and you certainly are not being civil, sir. Additionally, you are saying that you will not hear of any parameters that protect my privacy and that Dan Pennell, who has violently discriminated, harassed, wrongfully terminated and retaliated against me, is going to be the lead "rapist" who will violate my privacy by "touching" my computer, while you cheer him on!

 No sir, I will not be volunteering for this assault on me and my rights.

Angela Lambert